IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MATTHEW DEWAN, Individually and   §
on Behalf of All Others           §
Similarly Situated,               §
                                  §
                Plaintiff,        §
                                  §
VS.                               §   CIVIL ACTION H-12-3638
                                  §
M-I, L.L.C. d/b/a MI SWACO,       §
                                  §
                Defendant.        §

**OPINION AND ORDER**

**GRANTING MOTION TO INTERVENE AND TRANSFER**

Pending before the Court in the above referenced cause, filed as a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, seeking to recover overtime pay, as well as asserting violations of the Texas Labor Code, in the failure to pay full and proper compensation, are (1) Sarmad Syed and Ashley Balfour's ("the *Syed* Plaintiffs'") motion to intervene[1] and transfer this case to the Eastern District of California (instrument #30), where they have previously filed a putative collective action under FLSA and Rule 23 class action for wage and hour violations under the California Labor Code[2]; (2) United States Magistrate Judge Frances Stacy's memorandum and recommendation

---

[1] The *Syed* Plaintiffs seek permissive intervention under Fed. R. Civ. P. 24(b)(1).

[2] *Syed, et al., v. M.I., LLC d/b/a M-I SWACO, et al.*, Case No. 1:12-cv-01718-AWI-MJS (E.D. Cal.)(the "*Syed* action").

(#47) that the motion be granted; and (3) Defendant M-I, L.L.C. d/b/a Mi Swaco's ("M-I Swaco's") objections (#49).   Plaintiff Matthew Dewan ("Dewan") does not oppose the motion to intervene and transfer(#34).

After reviewing the record and the applicable law, and reviewing *de novo* specific objections made by M-I Swaco, for the reasons stated below the Court overrules M-I Swaco's objections and grants the *Syed* Plaintiffs' motion to intervene and transfer.

## Standard of Review

Objections timely filed within fourteen days of entry of the Magistrate Judge's memorandum and recommendation must specifically identify the findings or recommendations for which the party seeks reconsideration.   *Byars v. Stephens*, No. 5:13-CV-189-DAE, 2014 WL 1668488, at *2 (Apr. 14, 2014), *citing Thomas v. Arn*, 474 U.S. 140, 151 (1985).   The court does not have to consider "'frivolous, conclusive, or general objections.'"   *Id., citing Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).   Findings by the Magistrate Judge to which the party specifically objects must be reviewed *de novo* under 28 U.S.C. § 636(b)(1)(C).   Findings to which no specific objections are made require that the Court only to decide whether the memorandum and recommendation is clearly erroneous or contrary to law.   *Id., citing U.S. v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).   The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**Magistrate Judge's Memorandum and Recommendation (#47)**

Magistrate Judge Stacy noted that Dewan, a drilling fluid specialist for M-I Swaco who claims that he was misclassified as an exempt employee and not paid overtime by M-I Swaco in violation of the FLSA, filed the instant suit on December 14, 2014. Dewan never moved for conditional certification of the putative class, and the deadline for such a motion has passed. The *Syed* Plaintiffs, former drilling fluid specialists[3] for M-I Swaco also alleging that they were improperly classified as exempt employees and not paid overtime, filed their collective action in the Eastern District of California on October 18, 2012 and moved for conditional nationwide certification on July 8, 2013.[4] The

---

[3] Also known as "mud engineers" or "mud men."

[4] This Court would point out that the *Syed* Plaintiffs' motion, #30, Decl. of Connor, Ex. 4 at p.8, seeks certification for

> All persons who were, are, or will be employed by Defendant, on or after the date that is three years before the issuance of an Order authorizing Notice (the "FLSA Class Period"), in the job position known as drilling fluid specialists ("DFS"), "mud engineer," "mudman," "mud man trainee," or "consultant mud man," or equivalent titles (the "FLSA Collective Plaintiffs").

This Court further notes that Dewan's Original Complaint (#1 at p.7) defined its putative class as follows:

> All current and former drilling fluid specialists or any other employee who: (1) worked at any business located in the United States that was owned, operated, and/or acquired by Defendant during the class period; (2) claim they were misclassified as exempt from overtime

Magistrate Judge found there was no dispute that the claims of both suits' Plaintiffs share some common questions of law and fact,[5] and she determined that this action should be transferred to the Eastern District of California pursuant to the "first-filed rule" in order to "avoid waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).  Moreover she opined that transfer is preferable to outright

---

compensation or was an hourly employee and now seek
payment for overtime hours worked; and/or (3) were
compensated on any basis where they were not properly
paid at a rate of time and a half for hours worked in
excess of forty (40).

Thus the *Syed* class, if certified, would encompass Dewan's
indivdual claims.

[5] Although M-I Swaco argues in the *Dewan* action that there is
no substantial overlap with the claims in the *Syed* action,
Magistrate Judge Stacy noted, and as pointed out by the *Syed*
Plaintiffs in their reply (#36 at p. 3), the parties in the *Syed*
action, including M-I Swaco, represented the opposite in th *Syed*
litigation:  "'The alleged collective class in the Dewan complaint
overlaps entirely with the collective class alleged in this
action.' Joint Scheduling Report a 7 (Document No. 10) in the Syed
action." #47 at p. 4 n.2.; copy at #30, Decl. of Jennifer L
Connor, Ex. 3.  The *Syed* Plaintiffs state that this Joint
Scheduling Report, filed on January 18, 2013, first made them aware
of the existence of the *Dewan* suit.  #30-1 at p. 3. The *Syed*
Plaintiffs state, "At that time, however, the docket record in
*Dewan* was limited since it had been pending only one month and it
was not clear that the *Dewan* pleading allegations were settled such
that the extent and nature of any overlap—and thus the need to
intervene and/or transfer—could be determined." #30-1 at p. 4.
In response, M-I Swaco argued that "pleadings in this matter have
been settled since at least July 1, 2013, the deadline set by the
Court for the parties to amend the pleadings." #35 at p. 4.

dismissal here because there is a substantial overlap between the allegations in the first-filed action and the instant suit. *Sutter Corp. v. P&P Industries, Inc.*, 125 F.3d 914, 920 (5th Cir. 1997); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999). The Magistrate Judge further found that while intervention of the *Syed* Plaintiffs, if viewed separately, might appear to delay adjudication of the original parties' rights, the fact that it is filed along with a motion to transfer this action to California where the first-filed action is pending means the intervention will not delay or prejudice the rights of the original parties. #47 at p.3. In response to M-I Swaco's contention that the facts and claims are not sufficiently similar, the Magistrate Judge disagreed and found "based on the nature of Dewan's job and work responsibilities, the jobs and work responsibilities of the Syed Plaintiffs, and the nearly identical FLSA overtime claims and FLSA exemption issues--substantial overlap between the allegations and claims in this case and the allegations and claims in the Syed action." #47 at p. 4. Although the *Syed* action asserts some claims under California state law while Dewan's case asserts only FLSA claims, she determined that the FLSA claims in both suits are the same and support transfer of the case. She rejected M-I Swaco's arguments that the *Syed* Plaintiffs delayed in seeking transfer and pointed out that M-I Swaco's filing of a motion for summary judgment one day after the *Syed* Plaintiffs filed their

motion to intervene and transfer supports her finding that the *Syed* Plaintiffs did not purposely delay filing their motion.  Moreover she found that M-I Swaco "made no showing that the time of the *Syed* Plaintiffs' motion was calculated to deprive Defendant of any advantage it may believe it has in this case" or that the instant suit can be resolved before the *Syed* action.

## Relevant Law

Federal Rule of Civil Procedure 24(b)(1)(B), addressing permissive intervention, states, "on timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Pursuant to Rule 24(b)(2)(3), "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Rejecting the view that "the requirement of timeliness is a tool of retribution which can be used to punish a would be intervenor for allowing time to pass before moving to intervene," the Fifth Circuit opined in *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970), that "since the timely application requirement under Rule 24 . . . was designed to insure that the original parties should not be prejudiced by the intervener's failure to apply sooner, . . . it has been the traditional attitude of the federal courts to allow intervention 'where no one would be hurt and greater justice would be attained.'"   *Id., citing The*

*Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure*, 37 Va. L. Rev. 863, 867 (1951).

In *NAACP v. New York*, 413 U.S. 345, 365-66 (1973),[6] the Supreme Court opined, "Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive.  Timeliness is to be determined from all the circumstances.  And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review."  *See also Jones v. Caddo Parish Sch. Bd.*, 704 F.2d 206, 218 (5th Cir. 1983)("Timeliness 'is not a word of exactitude or of precisely measurable dimensions'; instead it is a measure 'to be determined from all the circumstances.'  As such, its determination in any given case is committed to the sound discretion of the district court, subject to reversal by an appellate court only for an abuse of that discretion."), *citing McDonald*, 430 F.2d at 1074, and *NAACP v. New York*, 413 U.S. at 366.

The Fifth Circuit examined the question of timeliness under Rule 24 in depth in *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977) and identified four factors that the district court should consider in determining whether a motion to intervene is timely:  (1) the length of time the intervenor applicant knew or

_____

[6] Cited for this proposition by *Jones v. Caddo Parish Sch. Bd.*, 735 F.2d 923, 926 (5th Cir. 1984)(*en banc*).

should have known of its interest in the case before it moved to intervene[7]; (2) the prejudice to existing parties caused by the delay in moving to intervene; (3) prejudice to the applicants if the motion is denied; and (4) any unusual circumstances that made the applicant unable to intervene sooner.

According to 7C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, and Adam N. Steinman, *Federal Practice and Procedure* § 1913 (3d ed. database updated Apr. 2014), "The principal consideration, which Rule 24(b)(3) requires the court to consider in exercising its discretion, is 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" Timeliness "should not be judged in a vacuum. The timeliness requirement is not intended as a punishment for the dilatory and the mere lapse of time by itself does not make an application untimely. The court must weigh the lapse of time in light of all the circumstances." 7C *Fed. Prac. & Proc. Civ.* § 1916.

> [D]elay in and of itself does not mean that intervention should be denied. The rule requires the court to consider whether intervention will 'unduly delay' the adjudication. In determining whether extra time would be an undue delay, the court must remember that [Federal Rule of Civil Procedure] 1 charges it with responsibility for both the 'just' and the 'speedy' determination of the action, and it must balance whatever delay may occur against the advantages of the disposition of the claim or

---

[7] As opposed to when a would-be intervenor became aware of the pendency of the case, which is not relevant to the timeliness inquiry. 558 F.2d at 265.

defenses in one action.

7C *Fed. Prac. & Proc.* § 1913.  Furthermore,

> [i]f there is a common question of law or fact,
> intervention may be allowed even though the intervenor
> also raises other issues that are not presented by the
> main action.  This, however, is one of the circumstances
> that the court may take into account in exercising its
> discretion and it may deny intervention if the
> complicating effect of the additional issues outweighs
> any advantage of a single disposition of the common
> issue.

*Id.*  Even when the court finds there is a common question of law or

fact or that the intervention will not cause undue delay or

prejudice the original parties' rights, permissive intervention is

wholly discretionary with the district court.  *New Orleans Pub.

Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470-71 (5th

Cir. 1984), *cert. denied*, 469 U.S. 1019 (1984); *U.S. v. City of New

Orleans*, 540 Fed. Appx. 380, 381 (5th Cir. Sept. 27, 2013).

In *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603

(5th Cir. 1999), the appellate panel opined the following with

regard to the discretionary doctrine of the first-to-file rule,

which "requires federal district courts--courts of coordinate

jurisdiction and equal rank,--to exercise care to avoid

interference with each other's affairs"[8]:

> Under the first-to-file rule, when related cases are
> pending before two federal courts, the court in which the
> case was last filed may refuse to hear it if the issues
> raised by the cases substantially overlap.  *See Save
> Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th

---

[8] *West Gulf*, 751 F.2d at 728.

Cir. 1997); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).  The rule rests on principles of comity and sound judicial administration.  *See Save Power*, 121 F.3d at 950; *West Gulf*, 751 F.2d at 728.  "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf*, 751 F.2d at 729.

The two cases do not have to be identical, but there must be "substantial overlap" of claims and issues. *Save Power*, 121 F.3d at 950.  Nor is complete identity of parties a requirement; indeed where complete relief is available in the first-filed forum and where the parties in the second-filed action could be made parties in the first, identity of the parties in the two suits is irrelevant. *Id.* at 951, *citing West Gulf*, 751 F.2d at 731 n.5. The court in which the second-filed suit is pending is the one to determine whether the issues might substantially overlap; if it so determines, the proper course is to transfer the case to the court with the first-filed suit. *Cadle Co.*, 174 F.3d at 606 ("[T]he 'first-to-file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide [i.e., the first-filed forum] whether the second suit filed must be dismissed, stayed or transferred and consolidated."), *citing Save Power*, 121 F.3d at 948 ("The Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues

-10-

should proceed.").

In determining whether matters in the two courts "substantially overlap," the court looks at factors such as whether "the core issue . . . was the same" and if "much of the proof adduced . . . would likely be identical." *Internat'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). "'Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.'" *Save Power*, 121 F.3d at 951, *quoting TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996).

The first-to-file rule should be followed "[i]n the absence of compelling circumstances." *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). Some courts have held that an anticipator's suit filed to obtain a favored forum is a compelling circumstance justifying not applying the first-to-file rule. *Twin City Ins. Co. v. Key Energy Services, Inc.*, Civ. A. No. H-09-0352, 2009 WL 1544255 at *5 (S.D. Tex. June 2, 2009)(and cases cited therein). As another example, "[c]ompelling circumstances exist 'where a court determines that a party engaged in bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that he could file a preemptive lawsuit.'" *Bank of America v. Berringer Harvard Lake Tahoe*, Civ. A. No. 3:13-CV-0585-

G, 2013 WL 2627085, at *2 (N.D. Tex. June 12, 2012), *quoting Chapa v. Mitchell*, No. A-05-CV-769-JN, 2005 WL 2978396, at *2 (W.D. Tex. Nov. 4, 2005).  Since a court has discretion whether to provide declaratory relief, courts have held that a declaratory judgment claim filed for the purpose of anticipating a trial of the same issue in a court of coordinate jurisdiction when the plaintiff has notice that the other party intends to file suit involving the same issues in a different forum, the court should dismiss the declaratory claim.  *909 Corp. v. Village of Bolingbroke Police Pension Fund*, 741 F. Supp. 1290, 1292-93 (S.D. Tex. 1990)(and cases cited therein).

### M-I Swaco's Objections (#49)

M-I Swaco objects to virtually all of the Magistrate Judge's memorandum and recommendation and argues that the *Syed* Plaintiff's motion to intervene should be denied.

M-I Swaco emphasizes that whether to grant a motion to intervene under Rule 24(b)(1) is a three-part inquiry:  (1) the court must determine if the motion is timely (*Stallworth*, 558 F.2d at 263); (2) the court must decide whether the *Syed* Plaintiffs' claims share a common question of law or fact with Dewan's claims (Rule 24(b)(1)(B); and (3) if a shared claim or defense exists, the court must determine whether the *Syed* Plaintiffs' intervention would unduly delay or prejudice the adjudication of Dewan's and M-I Swaco's rights (Rule 24(b)(3).

M-I Swaco insists the *Syed* Plaintiffs' motion is untimely.  It observes that counsel for the *Syed* Plaintiffs admits knowing of the *Dewan* lawsuit and its FLSA claims since January 18, 2013, approximately a year before *Syed* Plaintiffs moved to intervene.[9] Defendant labels as "specious" their claim that it was not clear that the *Dewan* pleading allegations were settled because the Original Complaint clearly states a FLSA claim and their intent to seek collective certification for all mud engineers employed by M-I Swaco on a nationwide basis.  Moreover, argues M-I Swaco, the *Syed* Plaintiffs have failed to provide an explanation for their delay in moving to intervene.  Even if their first reason for delay, unsettled pleadings, were sufficient, M-I Swaco contends that the pleadings in the *Dewan* litigation were settled as of July 1, 2013, when the deadline to amend expired, yet the *Syed* Plaintiffs waited another six months before seeking to intervene.[10]

---

[9] The Court observes that it is not clear from the *Syed* Plaintiffs' initial explanation for not moving to intervene whether their counsel had full knowledge of claims in the *Syed* suit, as this Court's perusal of its pleadings demonstrates that the suit is not predominately about a class action under California law; instead the FLSA allegations are the core of the suit.

[10] M-I Swaco also asserts that Dewan was aware of the *Syed* action since April 4, 2013, as indicated in the Joint Discovery/Case Management Plan in the *Syed* action, but Dewan never moved to transfer this matter to the Eastern District of California or to consolidate his suit with the California case.  Moreover Defendant points out that in the Joint Discovery/Case Manager Plan filed in the *Dewan* suit (#17 ¶2), Dewan identified the *Syed* action as related to the *Syed* suit, but stated, "Although a Fair Labor Standards Act claim has been pled, the claims in this case are predominantly California State Law claims."

Regarding the second concern, prejudice, Defendant points out that the *Syed* case currently has no discovery cutoff, dispositive and non-dispositive motions deadline, and trial date set and that the California court has extended the class and collective action certification motion deadlines until December 5, 2014.   In contrast, Dewan has abandoned his collective action claim by not filing a timely motion for certification, while the discovery, dispositive, and non-dispositive motions deadlines have expired. Moreover M-I Swaco has a motion for summary judgment (#31) pending in this action and a trial date of March 2, 2015.   Contrary to the Magistrate Judge's finding, argues M-I Swaco, it will be prejudiced because resolution of this case would be delayed and expenses will unnecessarily and significantly be increased if the case is

---

This Court observes that a plaintiff in a second-filed suit in his chosen forum generally would not move to transfer or consolidate his case with an earlier filed one in a different forum, nor does he have to under the law.   The focus here must be on the *Syed* Plaintiffs' motion to intervene and transfer, not on the fact that Dewan did nothing to combine the two actions.   In addition, it is illogical to argue that a possible motion to transfer and consolidate from Dewan, which was never made and was not required to be, was untimely.   Furthermore, under *Stallworth* the issue is not when a would-be intervenor knew of the *Syed* action, but when he knew or should have known of his interest in that suit.   M-I Swaco does not establish when Dewan knew or should have known of his interest in the suit.

Of greater import here is that before the filing of the *Syed* Plaintiff's motion to intervene and transfer, Dewan's counsel indicated to counsel for the *Syed* Plaintiffs that Dewan is amenable to the transfer of this case to the Eastern District of California. #30 at p.3.   Thus Dewan's choice of forum, usually a significant consideration in determining whether to transfer a suit, is irrelevant here.

transferred.

About the third factor, the *Syed* Plaintiffs would not be unduly delayed or prejudiced by a denial of their motion, nor have they asserted that they would be. Their only purpose in seeking transfer under the first-filed rule is potentially inconsistent judgments posed by two cases proceeding in separate courts. Because Dewan has not and now cannot seek conditional certification of a class, there will be no waste of judicial resources posed by overlapping collective actions and no confusion caused by two collective action notice procedures. Nor would denial of the motion prejudice the *Syed* Plaintiffs because they are already litigating their claims in their chosen forum.

As to the last factor, *Syed* Plaintiffs have not alleged any unusual circumstances that would justify their delay on moving for intervention and transfer.

M-I Swaco further objects that the two suits do not share claims involving common questions of law or fact, nor do they "substantially overlap, for purposes of permissive intervention. It complains that the Magistrate Judge minimized the presence of the *Syed* Plaintiffs' California state law claims, which are not found in *Dewan*. More particularly, they contend that the *Syed* Plaintiffs conclusorily point to Dewan's job title and FLSA claim but fail to address the facts that Dewan performed his duties in a different state, for different clients, under different supervisors

-15-

and with a different level of discretion than the *Syed* Plaintiffs. *See* 29 C.F.R. §541.2 ("A job title alone is insufficient to establish the exempt status of an employee.   The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations."); *Reyes v. Texas Ezpawn, L.P.*, 2007 WL 101808, at *2,5 (S.D. Tex. Jan. 8, 2007)(FLSA exemption criteria require individual, fact-specific analysis of an employee's job responsibilities; plaintiffs' job duties, geographic location, supervision, and salary are relevant considerations when determining if they are similarly situated for purposes of collective action certification).   In their motion for conditional collective action certification (#30-6 at pp. 11), M-I Swaco claims that the *Syed* Plaintiffs assert that their duties consisted only of taking samples of drilling mud, keeping track of inventory and reporting to a representative "who ran the rig and who was ultimately responsible for [their] work"; in other words, according th M-I Swaco, "they exercised no discretion or independent judgment and merely followed orders."   #49 at p. 12.   In stark contrast, claims Defendant, Dewan's deposition testimony demonstrates that he had "a far more significant and responsible role making recommendations to, and interacting with, the client representatives at the drill sites where he worked." Dewan "testified at length about the independent judgment and discretion

he exercised." #49 at p. 13, citing #35-2 at pp. 9:14-17, 22:9-22, and 23:4-10.[11] Examples include bringing mud back within required specifications by selecting among chemical additives to achieve the desired result and improve drilling conditions, recommending deviations from specifications to address such conditions as changing circulation rate, altering drill speed, conducting more "sweeps," and adjusting "mud weight" to prevent intrusion of gas into the well. #35-2 at pp. 21:11-31; 29:2-7; 32:11-171:10. While the *Syed* Plaintiffs vaguely suggest that the client representative was "ultimately responsible for [their] work," Dewan, although conceding that the client representative did "run the rig" and could choose whether to implement Dewan's recommendations, testified that he was responsible for making recommendations based on his own discretion and judgment for maintaining or correcting drilling mud consistency and how to maintain or modify drilling mud properties to meet real-time challenges of the well to the client representative, relying "upon testing, conversations with rig workers and his own visual inspection of the mud," and that the client representatives followed Dewan's recommendations "the vast majority of the time." #49 at p. 14, citing #35-2 at pp. 19:15-119:1:6. Another area of major difference relates to inventory. While the *Syed* Plaintiffs represent that they merely kept track of inventory, Dewan testified that he made recommendations to the

---

[11] Page numbers refer to the CM/ECF page numbers.

client representative for the purchase of various additives and equipment manufactured by M-I Swaco, functioned as a sales person and often consummated sales through orders directly to M-I Swaco's warehouse, as opposed to such products from competitors.   *Id*. at pp. 7:12-24:4; 9:14-17; 14:7-80:6; 21:3-21; 22:9-22; 23:4-10; 24:4-17:3; 29:17-29:7; 30:2-9; 31:14-21; 32:11-171:10; and 35-43, Exs. 8 and 9.

Finally M-I Swaco claims that "[t]he *Syed* Plaintiffs' delay in seeking the transfer shows that the purpose of such transfer is to manipulate the forum" to secure a more favorable forum and that the motion should be denied.

The Court notes that Defendant has not made objections to a transfer under any of the criteria for a § 1404(a) transfer.

### The Court's Decision

The Magistrate Judge has correctly described the law relating to intervention, the first filed rule, and transfer of venue pursuant to that rule where there is substantial overlap of claims and issues. This Court would add that because these two FLSA actions are pending concurrently, both initially collective actions,[12] against the same defendant, for the same causes of action under the FLSA, at the Court's discretion the first-filed rule

---

[12] The clear and unambiguous language of § 216(b) does not bar employees from bringing more than one collective action based on the same alleged statutory violations, especially since only opt-in plaintiffs are bound by the decisions in each. *Akins v. Worley Catastrophe Response, LLC*, 921 F. Supp. 2d 593, 598 (E.D. La. 2013)

could be applied. *See Akins v. Worley Catastrophe Response, LLC*, 921 F. Supp. 2d 593, 598-99 (E.D. La. 2013).

Timeliness is the key issue here regarding intervention. As should be evident from the Court's earlier discussion, M-I Swaco perceives timeliness, which "is not a word of exactitude or of precisely measurable dimensions" and must be determined from all the circumstances of a case at the discretion of the court, far too narrowly and rigidly. Under Rule 24(b), the Court's principal focus not on delay, but on **undue** delay and on whether the delay will prejudice the original parties' rights. Dewan, himself, has indicated he does not oppose the intervention or the transfer. His claims are encapsulated in the *Syed* collective action so he will not lose his rights. While Dewan's claims may not be resolved quite as quickly as M-I Swaco would like if the motion to intervene and transfer is granted,[13] M-I will benefit in both time and expense from having to defend itself in one forum rather than two against allegations of substantially similar FLSA violations (misclassification and unpaid overtime, which are the core of both actions) at this stage of the litigation, and if the collective action is and remains certified, justice will benefit from the avoidance of potentially contradictory results and piecemeal results because there will be a uniform result. Plaintiffs would

---

[13] The Court observes that neither one of these cases will be resolved in the near future. Docket call and trial in *Dewan* are not set until March 2015.

also benefit in terms of lower litigation costs. Judicial efficiency would be served, too.[14] If it is determined by the Eastern District of California court that the cases are not substantially overlapping, Dewan will be able to proceed to judgment on its own merits.

In arguing that the two actions do not share common questions of law or fact and do not substantially overlap, M-I Swaco complains that the Magistrate Judge looked only a job title and not at the specific duties performed by Dewan in a different state for different clients under different supervisors with a different level of discretion than the *Syed* Plaintiffs. FLSA provides that a collective action may be maintained where claimants are "similarly situated." 29 U.S.C. § 216(b). This Court finds that M-I Swaco's argument is premature. District courts in the Fifth and the Ninth Circuits, like most courts in the country, follow a two-step approach to certification of a collective action: when notice to prospective class members is first sought and

---

[14] Judge Stacy found that because the *Syed* Plaintiffs filed their motion to intervene in January 2, 2014, a day before M-I Swaco filed its motion for summary judgment, "it cannot be said that the  Syed Plaintiffs purposely delayed the filing of their Motion to Intervene and Transfer in order to prejudice Defendant." #47 at p.3 n.1.  This Court observes that in the motion to intervene, the *Syed* Plaintiffs argued that their motion was timely and would not delay or prejudice the rights of the *Dewan* parties since there was no motion for conditional certification nor substantive motion pending in *Dewan*.  The immediate filing of M-I Swaco's motion for summary judgment one day later suggests to this Court that its purpose may have been to undermine the *Syed* Plaintiffs' efforts to intervene in and transfer this case.

subsequently after discovery. *See Newberg on Class Actions* § 24:3 (4th ed. 2008); *see, e.g.*, *Nieddu v. Lifetime Fitness, Inc.*, ___ F. Supp. 2d _____, Civ. A. No. H-12-2726, 2013 WL 5530809, at *2-3 (S.D. Tex. Sept. 30, 2013); *Wellens v. Daiichi Sankyo Inc.*, No. C-13-00581 DMR, 2014 WL 1422979, at *2 (N.D. Cal. 2014). Neither the FLSA nor the two Circuits have defined "similarly situated," but district courts in both Circuits have held that prior to conditional class certification, plaintiffs need merely allege that the putative class members were subject to a single illegal policy, plan or decision, as Dewan and *Syed* Plaintiffs have here. *Id.*; *id.* ("a 'very light burden'"). Dewan's Original Complaint does not limit its claims to Texas, asserts that the drilling fluid specialists regularly work in excess of 40 hours per week and are not paid overtime, and that "these same illegal pay practices were applied to all employees of Defendant who were compensated in the same or similar manner to that of Plaintiff." #1 at p. 4. He asserts that these other employees "have been victimized by Defendant's patterns, practices and policies identified above in violation of the FLSA," that they "are similarly situated to Plaintiff because . . . they held similar positions, were compensated in similar manner and were denied overtime wages at a rate of time and one-half for hours worked in excess of forty." *Id.* at p. 6. The *Syed* Plaintiffs point out that the declarations supporting their motion for conditional certification in the

California case "describ[e] the uniformity of the training and job duties from mud men all around the United States. The evidence presented herewith shows that the mud men all perform duties requiring no special educational background and according to MI SWACO's step-by-step instructions. They are all classified so as to avoid payment of overtime wages despite spending two weeks in a trailer with little freedom to do anything but work." #30-6 at p. 14. It will be for the California court to decide whether the two actions should be combined.

If they are, only during the second stage, after completion of discovery, and only if a defendant files a motion to decertify, does the court then have to make a detailed factual determination about whether the plaintiffs are similarly situated. *See, e.g., Nieddu*, 2013 WL 5530809, at *2-3 ("fact intensive review"); *Wellens v. Daiichi Sankyo Inc.*, 2014 WL 1422979, at *2 (At the second stage "the court makes a factual determination about whether the plaintiffs are similarly situated by weighing various factors"). Under M-I SWACO's unpersuasive reasoning if such fact-specific determination need be made prior to intervention and transfer, intervention and transfer under the first-filed rule could not happen until late in the litigation. The Court finds that the *Syed* Plaintiffs have met their light burden to show that the claims substantially overlap and that all plaintiffs have alleged that they are subject to M-I Swaco's practice and policy, sufficient to

justify intervention and transfer at this notice stage of the litigation.

Furthermore, regarding M-I Swaco's contention that the *Syed* Plaintiffs' conclusory allegations of job title and FLSA allegations are insufficient to demonstrate "substantial overlap" with Dewan's claims because Dewan's job involved far more discretion and individual judgment than those of the mud men alleged in the putative collective *Syed* action, the Court finds that M-I Swaco makes and relies on some unfounded inferences from Dewan's deposition testimony.  *See* #35, Ex. 2 and attached Exs. 8 (M-I Swaco's job description of a Drilling Fluid Specialist II) and 9 (M-I Swaco's job description of a Drilling Fluid Specialist II), all of which M-I Swaco claims supports its objections that Dewan's job was not similarly situated to those of mud men in the *Syed* action.  The lists include most of the duties argued by M-I Swaco in its objections that Dewan's duties involved substantial discretion and individual judgment.  Dewan was initially a Specialist II and was promoted to Specialist III.

Significantly, Dewan was never asked whether these job descriptions applied only to his Texas project or whether they were employed by M-I Swaco nationwide or worldwide.[15]  The documents do

---

[15] M-I Swaco became part of Schlumberger through a merger with Smith International in August 2010 and its website states that it has "over 13,000 employees in more than 75 countries around the world."

not indicate that the job description was limited to Dewan's
locale.   M-I Swaco does not indicate whether it ever asked
Plaintiffs in the *Syed* action the same questions, and it presents
no evidence that its drilling fluid specialists in California or
the collective action opt-ins from elsewhere in the country did or
did not perform the same functions in the same way with similar
discretion and judgment.[16]   Moreover, asked to review the "primary

---

[16] While not evidence in this case, the Court observes that on
the Schlumberger website, there is a job description of a drilling
fluid specialist is all locations which expressly and clearly
covers the discretionary kinds of duties identified in the *Dewan*
deposition and M-I Swaco's objections, highlighting the deficiency
in M-I Swaco's argument that Dewan's duties were distinctive in his
use of discretion and personal judgment:

DRILLING FLUIDS SPECIALIST

Location:  All locations

Job Description
The Drilling Fluids Specialist provides onsite services
associated with measuring and testing drilling fluids and
supervising the mixing and pumping operations.
Activities also include performing technical analyses and
making informed recommendations for controlling fluid
properties. . . . .

**Responsibilities**

-Reviews fluids program in order to prepare orders and
 mixing plans.
-Writes procedures for mixing and handling of products.
-Gathers samples and performs tests to determine trends
 and identify contaminants.
-Records test results to identify trends.
-Interprets property-test data to establish required
 treatment or action.
-Determines cause of fluid, hold, or system problems to
 assist in treatment recommendation.
-Determines chemical treatments required to optimize

duties, job functions" listed on each exhibit and whether "those were your primary responsibilities," Dewan answered "yes" or "pretty close."  #35-2, at pp. 76:2-77; pp. 82:9-24.  Regarding Exhibit 8, when Dewan was asked if there was anything on the list that he did not do, contradicting one of M-I Swaco's that one of Dewan duties was so discretionary as to distinguish him from other mud men in the country, he answered:

> Just to sell and influence client's decision in buying the optimal M-I Swaco products and systems to maintain the necessary mud products.  I mean, that was--that was kind of all done ahead of time.  They were already sold on M-I.   That was why we were out there. . . . But everything, as far as testing, gathering chemicals, treatment--yeah, everything else [in the list on the job description] looks pretty good.

#35-2 at p. 77:12-24.  When asked if he performed any jobs not on the list on each job description, he identified only one, in essence when various procedures caused excess mud on the rig, he would decide what to do with it.  More important, a review of both lists makes clear that a number of the duties were highly discretionary.   Because there is no evidence addressing and comparing Dewan's duties with those of M-I Swaco's drilling fluid specialists in other locations through similar depositions or

---

         drilling parameters.
     -Advises clients on potential treatments or improvements
      to the fluid system based on data analysis and mud
      testing.
     -Recommends solids--control processes to ensure economic
       removal.
     -Supervises rig personnel performing chemical additions
      and recording drilling fluid parameters. . . .

affidavits, M-I's argument lacks evidentiary weight.

Finally, the Court finds that M-I Swaco has failed to show compelling circumstances that would warrant denial of the motion to intervene and transfer pursuant to the first-filed rule. There is no evidence that the *Syed* action was a preemptive suit or an improper anticipatory filing; indeed it was filed approximately two months before the instant action. Nor has any bad faith or forum manipulation on their or Dewan's part been shown. Nor has the *Syed* Plaintiffs' delay in filing their motion been shown to be a calculated effort to manipulate the forum.

Accordingly, the Court

ORDERS that M-I Swaco's objections are OVERRULED, the *Syed* Plaintiffs' motion to intervene and transfer is GRANTED, and this case is TRANSFERRED to the Eastern District of California to the docket of the judge overseeing *Syed, et al, v. M.I., LLC d/b/a M-I SWACO, et al.*, Case No. 1:12-cv-01718-AWI-MJS.

**SIGNED** at Houston, Texas, this _27ᵗʰ_ day of _June_, 2014.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE